UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CHRISTOPHER SKINNER,

       Plaintiff,

                          CASE NO. 04-73816
                          JUDGE NANCY G. EDMUNDS
                          MAGISTRATE JUDGE PAUL KOMIVES

  v.


A. PETER GOVORCHIN,
HUGH WOLFENBARGER,
LINDA WITTMANN and
DOUGLAS FORD;

       Defendants.

_____/


## REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT (Doc. Ent. 14)

Table of Contents

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    Background and Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    Defendants' Dispositive Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    C.    Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        1.    Fed. R. Civ. P. 12 ("Defenses and Objections") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
        2.    Fed. R. Civ. P. 56 ("Summary Judgment") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    D.    Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        1.    The Court need not address the issue of exhaustion under 42 U.S.C. § 1997e. . . . . . . . . . . . . . . . . . . . . . 10
        2.    The mandate's inclusion of costs is enforceable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        3.    Plaintiff has not stated due process or First Amendment access to courts claims stemming from the removal of money from his account upon which relief may be granted. Furthermore, defendants are entitled to summary judgment on plaintiff's First Amendment retaliation and Fourth Amendment unreasonable seizure claims. . . 20
        4.    Defendant Govorchin is entitled to absolute immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
        5.    Plaintiff's claims against Wolfenbarger based upon his denial of plaintiff's grievance and his supervisory role as warden should be dismissed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
        6.    The Court should decline to exercise supplemental jurisdiction over plaintiff's state-law fraudulent conveyance claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
        7.    The Eleventh Amendment bars plaintiff's claims against defendants in their official capacities to the extent they seek monetary damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
        8.    In light of these conclusions, the Court need not address the defense of qualified immunity. . . . . . . . . . . . . 49
        9.    Defendants' request for costs and attorney fees is premature. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

I.      **RECOMMENDATION:**  The Court should grant defendants Govorchin, Wolfenbarger,

Wittmann, and Ford's motion to dismiss and for summary judgment.  (Doc. Ent. 14).

II.     **REPORT:**

A.      **Background and Procedural History**

1.      *Skinner v. Jones*, **Case No. 01-CV-00169 (Grand Rapids)**

Plaintiff Christopher Skinner is currently confined at Macomb Correctional Facility

(MRF) in New Haven, Michigan.  On March 12, 2001, while he was incarcerated at Carson City

Correctional Facility (DRF), plaintiff filed a lawsuit under 42 U.S.C. § 1983 for deprivation of

property, alleging that he was denied electronic and computer publications.  Case No. 01-CV-

00169 (*Skinner v. Jones*), Compl. at 3 ¶ 13.  On March 22, 2002, Chief Judge Bell granted in

part and denied in part defendants' motions for summary judgment.  On January 21, 2003, Judge

Bell granted defendants' motion for summary judgment.  This judgment terminated the case.

Plaintiff filed an appeal of the district court's judgment in the Sixth Circuit Court of

Appeals on February 10, 2003.  Case No. 03-1170 (*Skinner v. Jones*); Mtn. Ex. 3.  On February

18, 2003, Magistrate Judge Scoville entered an order to proceed in forma pauperis and for

payment of filing fee on appeal.  (Doc. Ent. 22 Exhibits (C)(1), (C)(2), and (C)(3)).  On

November 4, 2003, the Sixth Circuit affirmed the district court's judgment, specifically

mentioning the district court's March 22, 2002 and January 21, 2003 decisions.  (Doc. Ent. 3

[Compl.] App. C); Mtn. Ex. 3; Rpl. Attach. 1.

On or about November 12, 2003, Assistant Attorney General Govorchin (defendant

Govorchin) submitted a bill of costs totaling $1,619.25 to the Sixth Circuit.  Compl. App.; Mtn.

Ex. 4.  The bill of costs was submitted pursuant to 28 U.S.C. § 1920 and Fed. R. App. P. 39 and

2

was comprised of $110.25 in brief reproduction costs (6th Cir. R. 39(b)) and $1,509.00 in joint appendix reproduction costs (6th Cir. R. 39(c)).  It was filed with the Sixth Circuit on November 17, 2003.  Mtn. Ex. 3; Rpl. Attach. 1.[1]

On March 5, 2004, the Sixth Circuit issued its mandate and costs related to this appeal were taxed to plaintiff's prison account in the amount of $1,619.25.  Compl. App. B; Mtn. Ex. 3; Rpl. Att. 1.  In a letter dated March 8, 2004, defendant Govorchin wrote to defendant Wittmann requesting that she process the Sixth Circuit's March 5, 2004 mandate.  Compl. Ex. E; Mtn. Ex. 2-B.  In a letter dated March 25, 2004, Linda Wittmann requested that the MRF Administration Officer collect $1,619.25 from plaintiff's account.  Compl. App. E; Mtn. Ex. 2-A.  According to plaintiff, Ford began withdrawals from the account without notice on April 8, 2004.  Compl. at 6 ¶ 29.  *See also* Doc. Ent. 22 Ex. B.[2]

**2.    *Skinner v. Bolden*, Case No. 02-CV-00765 (Grand Rapids)**

On November 1, 2002, while incarcerated at MRF, plaintiff filed a prisoner civil rights complaint allegedly arising out of the same transaction or occurrence as Case No. 01-CV-00169.  On April 14, 2003, Chief Judge Bell entered an opinion and a judgment dismissing plaintiff's complaint for failure to state a claim upon which relief might be granted pursuant to 28 U.S.C. §

---

[1]On November 21, 2003, plaintiff filed a petition for en banc rehearing, but the Sixth Circuit entered an order denying the petition on February 26, 2004.  Mtn. Ex. 3; Rpl. Attach. 1.

[2]The obligation date was April 8, 2004.  Mtn. Ex. 2-D.  It is not clear, but it appears that an account entry was made on that date.  Mtn. Ex. 2-I.

According to defendant Ford, Assistant Business Manager MRF, "[t]he amount of the judgment . . . was entered against the trust account of [plaintiff]" on April 20, 2004.  Mtn. Ex. 2 [Ford Affid.] ¶ 6; Mtn. Ex. 2-H.

On August 5, 2004, a letter was sent to plaintiff "to review his prison trust account to see if the filing fee and award of costs for this appeal has been paid."  Rpl. Att. 1.

1915A and 42 U.S.C. § 1997e(c); stating that there was not a good-faith basis for appeal, 28

U.S.C. § 1915(a)(3); and dismissing the complaint, citing 28 U.S.C. § 1915(g).

Plaintiff filed a notice of appeal on May 5, 2003 and a motion for leave to appeal in

forma pauperis.  Case No. 03-1553.  On May 7, 2003, Magistrate Judge Scoville entered an order

to proceed in forma pauperis on appeal and for payment of appeal fee.  On March 12, 2004, the

Sixth Circuit affirmed the district court's judgment.

### 3.       The instant case

Plaintiff filed the instant complaint pro se on October 13, 2004.  The complaint concerns

his allegation that the appeals costs were wrongfully garnished from his prison account and is

filed against the following four defendants: Assistant Attorney General, A. Peter Govorchin;

MDOC Litigation Manager, Linda Wittmann; MRF Administrative Manager, Doug Ford; and

MRF Warden, Hugh Wolfenbarger.  Compl. at 2 ¶¶ 7-10.  Plaintiff alleges the following: (1) all

four defendants fraudulently conveyed money in plaintiff's prison account in violation of MICH.

COMP. LAWS §§ 600.2920, 2919a, 750.218 and the Prisoner Litigation Reform Act 28 U.S.C. §

1915(f)(2)(B) & (B)(2) and (2) all four defendants misrepresented the appeals court opinion as

an order for enforcement against plaintiff violating MDOC's policy directives PD 04.02.105

(Prisoner Payment of Court Costs) and PD.04.02.107 (Collection of Court Ordered Victim

Restitution/Filing Fees and Costs).  Compl. at 4-5 ¶¶ 18-23; Doc. Ent. 5.  *See also* Compl. at 10-

11 ¶¶ 50-62.  Among the forms of relief plaintiff seeks are declaratory judgments, permanent

injunction, restoration of the $1,615.25 garnished from his prison account, and punitive damages, as well as attorney fees.  Compl. at 11-12 ¶¶ 63-69.[3]

**B.      Defendants' Dispositive Motion**

On December 21, 2004, defendants Govorchin, Wittmann, Ford, and Wolfenbarger filed a motion for dismissal and for summary judgment (Doc. Ent. 14 [Mtn.]).  Defendants argue that: (1) "A mandate issued by the court of appeals is a command or order, which a person is bound to obey."  (Doc. Ent. 15 [Mtn. Br.] at 3); (2) "If a court's order is vague or unclear, the issuing court is the proper forum to seek clarification."  Therefore, plaintiff should go to the Sixth Circuit Court of Appeals.  Mtn. Br. at 3; (3) "A suit against state officials in their official capacities is considered a suit against the state, and the Eleventh Amendment bar[s] such suits."  Mtn. Br. at 4; (4) "Defendant Govorchin is absolutely immune from liability as an assistant attorney general acting within the scope of his employment."  Mtn. Br. at 5; (5) "A prison official whose only involvement in a matter is responding to a prisoner grievance is not so personally involved in the matter to subject him to section 1983 liability."  Mtn. Br. at 6; (6) "Defendants, if not absolutely immune from suit, are entitled to qualified immunity because they acted reasonably in executing the Sixth Circuit's mandate."  Mtn. Br. at 7; (7) "Defendants Govorchin, Wolfenbarger, Wittmann, and Ford are not liable under the state penal code or civil code for obtaining money under false pretenses because they committed no wrongful act."  Mtn. Br. at 9; and (8) "Because there has been no violation of a federal right plaintiff is not entitled to equitable relief."  Mtn. Br. at 15.

_____

[3]On December 10, 2004, Judge Edmunds referred this case to me for all pretrial proceedings.

On January 31, 2005, plaintiff filed a response to defendants' dispositive motion.  (Doc. Ent 19 [Rsp.]).  The same day, plaintiff also filed a statement of undisputed facts (Doc. Ent. 21)[4] and another response brief (Doc. Ent. 22 [Rsp.]).  Defendants filed a reply on February 14, 2005 (Doc. Ent. 20 [Rpl.]).

**C.      Applicable Law**

**1.      Fed. R. Civ. P. 12 ("Defenses and Objections")**

Federal Rule of Civil Procedure 12 sets forth rules regarding defenses and objections.  As to how defenses and objections should be presented, the rule states in pertinent part:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, . . . (6) failure to state a claim upon which relief can be granted[.]

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

"If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  Fed. R. Civ. P. 12(b).

In order for a court to dismiss a complaint for failure to state a claim, it must appear beyond doubt that plaintiff can prove no set of facts supporting his claim that would entitle him to relief.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Plaintiff is not required to

---

[4]Plaintiff's statement of undisputed facts, seven in number, refer to the seven arguments presented in the response brief (Doc. Ent. 22).

specifically set out the facts upon which he bases his claim. *See id.* at 47. Rather, "a short and plain statement of the claim" pursuant to Federal Rule of Civil Procedure 8(a)(2) gives defendant fair notice of plaintiff's claim and the grounds upon which it rests. *See id.*

The reviewing court must construe the complaint in the light most favorable to plaintiff and must presume all factual allegations in the complaint as true. *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). The purpose of Rule 12(b)(6) is to give defendant the opportunity to test whether plaintiff is entitled to legal relief as a matter of law even if everything alleged in the complaint is true. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley*, 355 U.S. at 48. A dismissal under Rule 12(b)(6) is generally disfavored by courts, as it is a dismissal on the merits. 2A JAMES W. MOORE, MOORE'S FEDERAL PRACTICE ¶ 12.07 (2d ed. 1995).

**2.    Fed. R. Civ. P. 56 ("Summary Judgment")**

Summary judgment, pursuant to Fed. R. Civ. P. 56, may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[5]

> A fact is 'material' and precludes grant of summary judgment if proof of that fact
> would have [the] effect of establishing or refuting one of [the] essential elements
> of a cause of action or defense asserted by the parties, and would necessarily

---

[5]In response to defendants' motion, plaintiff notes that defendants have not filed a responsive pleading pursuant to Fed. R. Civ. P. 8(c) setting forth their Fed. R. Civ. P. 56(c) defense. Rsp. at 3-4.

> affect [the] application of appropriate principle[s] of law to the rights and
> obligations of the parties.

*Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citing *Johnson v. Soulis, Wyo.*, 542

P.2d 867, 872 (1975) (quoting BLACK'S LAW DICTIONARY 881 (6th ed.1979)).  "In

evaluating a motion for summary judgment we view all evidence in the light most favorable to

Plaintiff . . . and assess the proof to determine whether there is a genuine need for trial."  *Gantt v.*

*Wilson Sporting Goods Co.*, 143 F.3d 1042, 1045 (6th Cir. 1998) (citations omitted).[6]

     The movant bears the burden of demonstrating the absence of all genuine issues of

material fact.  *See Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986).  The moving

party need not produce evidence showing the absence of a genuine issue of material fact.

Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out

to the district court – that there is an absence of evidence to support the non-moving party's

case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party discharges

that burden, the burden shifts to the non-moving party to set forth specific facts showing a

genuine triable issue.  Fed. R. Civ. P. 56(e); *Gregg*, 801 F.2d at 861.

     "Although the nonmoving party 'may not rest upon the mere allegations or denials' of his

pleading, Fed. R. Civ. P. 56(e), a verified complaint . . . satisfies the burden of the nonmovant to

respond." *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999).[7]  "[A] verified complaint . . .

would have the same force and effect as an affidavit and would give rise to genuine issues of

---

    [6]The Sixth Circuit cited both *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) and *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) in support of this statement.

    [7]Plaintiff did not sign his complaint under penalty of perjury.  *See* Compl. at 12; 25 U.S.C. § 1746 ("Unsworn declarations under penalty of perjury").

material fact." *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).  However, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e).  *See also Hamilton v. Roberts*, No. 97-1696, 1998 WL 639158, *5 (6th Cir. Sept. 10, 1998) (unpublished) (personal knowledge required); *Daniel v. Cox*, No. 96-5283, 1997 WL 234615, *2 (6th Cir. May 6, 1997) (unpublished) (conclusory assertions are insufficient for purposes of surviving summary judgment); *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (citing *Daily Press, Inc. v. United Press Int'l*, 412 F.2d 126, 133 (6th Cir. 1969)) (cannot consider hearsay evidence).

"Demonstration of simply 'metaphysical doubt as to the material facts' is insufficient." *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992), citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  As the United States Supreme Courts stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* at 246-250 (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986).  The standard for summary judgment mirrors the standard for a directed verdict under Fed. R. Civ. P. 50(a).  *Anderson*, 477 U.S. at 250.  Consequently, a non-movant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact.

**D.**     **Analysis**

1.      **The Court need not address the issue of exhaustion under 42 U.S.C. § 1997e.**

a.      **42 U.S.C. § 1997e ("Suits by prisoners")**

42 U.S.C. § 1997e governs 42 U.S.C. § 1983 suits by prisoners.  It states, in pertinent part, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  "District courts should enforce the exhaustion requirement sua sponte if not raised by the defendant." *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998).

With regard to the dismissal of prisoner lawsuits, 42 U.S.C. § 1997e(c) provides:

(1) The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

(2) In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.

42 U.S.C. § 1997e(c)(1)-(2). "Federal courts should not adjudicate any such claim until after exhaustion unless the complaint satisfies § 1997e(c)(2)."  *Brown*, 139 F.3d at 1104.

Plaintiff has the burden to prove that he or she has exhausted his or her administrative remedies.  "[P]risoners filing § 1983 cases involving prison conditions must allege and show that

10

they have exhausted all available state administrative remedies." *Brown*, 139 F.3d at 1103.  "[A]

prisoner must plead his claims with specificity and show that they have been exhausted by

attaching a copy of the applicable administrative dispositions to the complaint or, in the absence

of written documentation, describe with specificity the administrative proceeding and its

outcome.  The reason for the requirement to show with specificity both the claims presented and

the fact of exhaustion is so that the district court may intelligently decide if the issues raised can

be decided on the merits." *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000) (citing

*Brown*).

**b.       Plaintiff has provided evidence of grievance identifier MRF-04-06-00747-16.**

Plaintiff filed three levels of grievances within the Michigan prison system.  *See*

Michigan Department of Corrections Policy Directive 03.02.130 ("Prisoner/Parolee

Grievances").  First, he filed a Step I grievance on June 13, 2004 in which he grieved the

accounting office and Govorchin, as well as the "AGO" (Attorney General's Office).  Compl.

App. A.  Defendant Ford responded on June 24, 2004, relying upon MDOC PD 04.02.105 ¶¶ S

& T.  (Doc. Ent. 18).

Second, plaintiff filed a Step II grievance on July 14, 2004 in which he identified

accounting office employee Ford and took issue with his Step I response.  Defendant

Wolfenbarger responded on July 26, 2004.  Third, on or about July 29, 2004, plaintiff filed a

Step III grievance in which he claimed that Wolfenbarger "failed to remedy or protect" plaintiff

from Govorchin, Wittmann, and Ford's alleged constitutional violations.  Compl. App. A; Doc.

Ent. 18.  Furthermore, on September 1, 2004, plaintiff wrote a letter of inquiry to the Step III

11

Grievance Coordinator regarding why he had not received a response to his Step III grievance. (Doc. Ent. 18).

**c.    Analysis**

Although there does not appear to have been a Step III response, the instant complaint was not filed until October 13, 2004 - several days after plaintiff sought the status of a response to his Step III grievance appeal.  Therefore, this case should not be viewed as one which was impatiently filed.  *See Freeman v. Francis*, 196 F.3d 641 (6th Cir. 1999) ("we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed.").

With that in mind, plaintiff has certainly exhausted his administrative remedies as to his claims against defendant Govorchin that are described in the Step I grievance.  However, the more involved issue is whether plaintiff has exhausted his administrative remedies as to the remaining (Whittmann, Ford, and Wolfenbarger) defendants.  *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003) ("We understand these policies to require that a prisoner seeking to administratively exhaust a claim against a prison official describe the alleged mistreatment or misconduct at Step I of the grievance process. By negative implication, we understand these policies to preclude administrative exhaustion of a claim against a prison official if the first allegation of mistreatment or misconduct on the part of that official is made at Step II or Step III of the grievance process.").

In this case, the Court need not address plaintiff's claim that he has satisfied 42 U.S.C. § 1997e(a).  Compl. at 3 ¶ 12.  This is because plaintiff has failed to state a claim upon which relief may be granted.  42 U.S.C. § 1997e(c)(2).

12

**2.      The mandate's inclusion of costs is enforceable.**

**a.      Parties' arguments**

Plaintiff complains that "no judgment of costs [was] awarded to the [d]efendants" in the Sixth Circuit's November 4, 2003 order and contends that the mandate did not include "an order requiring or instructing the removal of funds from [his] trust account."  Compl. at 6 ¶¶ 25, 27. According to plaintiff, "the appellate court did not authorize through the 'Mandate' the freezing of [p]laintiff's trust account to secure payment of the amount owed[.]" Compl. at 6 ¶ 28.[8]

In response to defendants' motion, plaintiff argues that *"[a]n appellate court's issued mandate is an official mode of communicating the judgment of the appellate court to the district court, not an order for costs against the plaintiff, as the defendants contend in their motion for summary judgment."*  Rsp. at 5-7 (emphasis added).  According to plaintiff, defendant Govorchin fraudulently represented that the mandate was "a proper and just garnishment order[.]" Rsp. at 5; Compl. ¶ 19.  Plaintiff claims that defendants want the Court to apply "generalibus specialia derogant", defined as "[s]pecial things take from generals[,]" *Black's Law Dictionary* 684 (6th ed. 1990), with "mandate" (the special word) having the same effect as "order" (the general word).  Rsp. at 5.  He contends that the special word "mandate" as contemplated by Fed. R. App. P. 41(a) is not taken from the general word "order".  Rsp. at 7. Nor, he claims, does a "mandate" constitute entry of judgment pursuant to Fed. R. Civ. P. 58 or Fed. R. App. P. 36.  Rsp. at 7.  He claims that "[a] mandate is issued with the support of a

---

[8]In response to defendants' motion, plaintiff claims that defendants' actions undermined the Sixth Circuit's November 4, 2003 order (it did not contain a cost provision) affirming the district court's judgment.  Rsp. at 2.  However, this claim is not clear, as the November 4, 2003 order pre-dates the November 12, 2003 bill of costs which is the subject of the instant lawsuit.

13

dispositive Court order, under [Fed. R. App. P. 36][,]" and the Sixth Circuit's November 4, 2003 order did not "order or award costs to [defendants][.]"  Rsp. at 7.  Plaintiff claims that, "a mandate by itself, under [Fed. R. App. P. 41(a)], without a separate supporting order entered by the appellate court, under [Fed. R. App. P. 36], is not an unequivocal order allowing cost."  Rsp. at 7.  He claims that summary judgment is inappropriate, because "[n]o evidence exist[s] to establish that [defendants] acted upon a court order when removing funds from [p]laintiff's prison account."  Rsp. at 7.

Plaintiff also argues that *"[t]he defendants' unauthorized collection of costs against plaintiff's prison trust account, violated [Federal Rules of Appellate Procedure 36 and 39]."*  Rsp. at 8-9 (emphasis added).  Plaintiff claims that the Sixth Circuit did not order payment of costs in its November 4, 2003 order; therefore, defendants cannot recover printing costs under Federal Rules of Appellate Procedure 39 and 36 and under 28 U.S.C. § 1915(f)(2)(A).  Rsp. at 8.  Plaintiff relies upon *Feliciano v. Selsky*, 205 F.3d 568 (2d Cir. 2000), wherein the plaintiff filed a motion in the Court of Appeals for the Second Circuit to disallow appeal costs sought by defendants.  *Feliciano*, 205 F.3d at 469.  The Second Circuit's order affirming the district court's judgment did not order plaintiff to pay costs, nor did the Fed. R. App. P. 36 judgment of the court clerk contain a provision for costs.  *Id*. at 572.  The Second Circuit stated that "[u]nless there is a specific direction by the court for the payment of costs by a prisoner proceeding in forma pauperis, no costs may be taxed by the prevailing party."  *Id*.[9]  Likewise, plaintiff argues, the Sixth Circuit's November 4, 2003 order did not include a provision for costs, so "no costs

---

[9]Plaintiff points out that he was granted in forma pauperis status in his prior federal case. Rsp. at 9.

[were] awarded to [defendants]." Rsp. at 9. Therefore, plaintiff questions how, in the absence of

supporting case law, defendants were enforcing the Sixth Circuit's order. Rsp. at 9. He claims

that defendants' argument that Fed. R. App. P. 41(a) creates a presumption that the March 3,

2004 mandate is a Fed. R. App. P. 36 order is "an excessive and wasteful strategy [of] fraud

upon the court." Rsp. at 9. Plaintiff claims this presumption is weakened by the terms of

defendants' November 12, 2003 bill of costs, which sought an "order" under Fed. Rules App. P.

36 and 39 and not a Fed. R. App. P. 41(a) mandate. Rsp. at 9.

    In response to these two arguments, defendants note plaintiff's reference to *Johnson v.*

*McNeil*, 217 F.3d 298 (5th Cir. 2000) which states in relevant part:

> [I]n this Circuit, when costs, either at the district or appellate level, are awarded to
> a prevailing party against an IFP prisoner, that prisoner shall be required to make
> payment pursuant to the manner outlined in [28 U.S.C. § 1915](b)(2). In the case
> of appellate costs, a prevailing party may be awarded costs after a judgment for
> costs has been rendered in its favor and it files a bill of costs with the clerk of this
> court within the time prescribed by Federal Rule of Appellate Procedure 39(d).
> Upon the clerk's approval of the bill of costs and issuance of the mandate, the
> clerk shall forward a copy of this opinion and the approved bill of costs to the
> custodial institution for collection pursuant to [28 U.S.C. § 1915](b)(2).

*Johnson*, 217 F.3d at 301-302 (footnotes omitted). Rpl. at 1-2. Defendants also note that "the

Court of Appeals will not issue a separate costs order." In support of this statement, they cite the

National Institute for Trial Advocacy. Federal Rules of Appellate Procedure 39, G. Leroy Street.

Rpl. at 2. Finally, defendants distinguish *Feliciano v. Selsky*, 205 F.3d 568 (2d Cir. 2000), in

part because plaintiff here did not file an opposition to the bill of costs and did not raise his

objection in the court of appeals. Rpl. at 2-3; *Feliciano*, 205 F.3d at 570.

**b.    Appellate rules regarding judgment, costs, and mandates**

15

Fed. R. App. P. 36 governs entry of judgment and notice.  In pertinent part, the rule provides that "[a] judgment is entered when it is noted on the docket.  The clerk must prepare, sign, and enter the judgment[.]" Fed. R. App. P. 36(a).  Fed. R. App. P. 39 governs costs.  In pertinent part, the rule provides that:

> (1) if an appeal is dismissed, costs are taxed against the appellant, unless the parties agree otherwise;
> (2) if a judgment is affirmed, costs are taxed against the appellant;
> (3) if a judgment is reversed, costs are taxed against the appellee;
> (4) if a judgment is affirmed in part, reversed in part, modified, or vacated, costs are taxed only as the court orders.

Fed. R. App. P. 39(a).  The rule further provides that:

> (1) A party who wants costs taxed must--within 14 days after entry of judgment--file with the circuit clerk, with proof of service, an itemized and verified bill of costs.
>
> (2) Objections must be filed within 10 days after service of the bill of costs, unless the court extends the time.
>
> *(3) The clerk must prepare and certify an itemized statement of costs for insertion in the mandate, but issuance of the mandate must not be delayed for taxing costs. If the mandate issues before costs are finally determined, the district clerk must--upon the circuit clerk's request--add the statement of costs, or any amendment of it, to the mandate.*

Fed. R. App. P. 39(d) (emphasis added).

Fed. R. App. P. 41 governs mandates.  In part, it provides that *"[u]nless the court directs that a formal mandate issue, the mandate consists of a certified copy of the judgment, a copy of the court's opinion, if any, and any direction about costs."*  Fed. R. App. P. 41(a) (emphasis added).  It further provides that "[t]he mandate is effective when issued."  Fed. R. App. P. 41(c). It also provides that "[t]he timely filing of a petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, stays the mandate until disposition of the petition or motion, unless the court orders otherwise."  Fed. R. App. P. 41(d)(1).

16

c.      **Analysis**

Plaintiff claims that "[t]he principal question before this [C]ourt is whether the Sixth

Circuit's [March 5, 2004 Fed. R. App. P. 41(a) mandate] is the same as [an Fed. R. App. P. 36

order] of the Court[.]" Rsp. at 5.  In the instant case, the Court should consider whether the

mandate has the same *effect* as an order for costs.

My analysis of this issue is guided by the definitions of these terms.  "Order" has been

defined as "[a] mandate; precept; command or direction authoritatively given; rule or

regulation." *Black's Law Dictionary* 1096 (6th ed. 1990) (citing *Brady v. Interstate Commerce

Commission*, 43 F.2d 847(N.D.W.V. 1930).  It has also been explained as a "[d]irection of a

court or judge made or entered in writing, and not included in a judgment, which determines

some point or directs some step in the proceedings." *Id*.  "Mandate" has been defined as "[a]

command, order, or direction, written or oral, which court is authorized to give and person is

bound to obey." *Black's Law Dictionary* 962 (6th ed. 1990) (citing *Silverman v. Seneca Realty

Co.*, 154 Misc. 35, 276 N.Y.S. 466 (N.Y.Sup. 1934)).  It has also been described as "[a] judicial

command or precept proceeding from a court or judicial officer, directing the proper officer to

enforce a judgment, sentence, or decree." *Id*.  Furthermore, it has been explained as "[a] precept

or order issued upon the decision of an appeal or writ of error, directing action to be taken, or

disposition to be made of case, by inferior court." *Id*.  Certainly, these definitions militate in

favor a recommendation that the mandate's inclusion of costs has the same effect as an order's

provision for costs.

Furthermore, the Sixth Circuit's insertion of bill of costs in the mandate was in

compliance with Fed. R. App. P. 39(d)(3) and Fed. R. App. P. 41(a).  Fed. R. App. P. 39(d)(3)

17

provides that "[t]he clerk must prepare and certify an itemized statement of costs for insertion in the mandate, but issuance of the mandate must not be delayed for taxing costs. If the mandate issues before costs are finally determined, the district clerk must--upon the circuit clerk's request--add the statement of costs, or any amendment of it, to the mandate."  Also, Fed. R. App. P. 41(a) provides that "the mandate consists of a certified copy of the judgment, a copy of the court's opinion, if any, and any direction about costs."  Therefore, the plain language of Fed. R. App. P. 41(a) addresses the mandate as a separate document.  *See also Corn Products Refining Co. v. Chicago Real Estate Loan & Trust Co.*, 185 F. 63, 66 (7th Cir. 1911) ("the mandate was sufficient, both for incorporation of such costs in the order and for execution to issue for the residue, although the mandate does not expressly direct either of these courses.  Undoubtedly it was assumed, in framing the above-mentioned [Circuit Court of Appeals] rule, that no direction was needful therein upon the method of enforcement, in the event of nonpayment of such costs, leaving the common means of execution to be adopted, if required.").

Additionally, two Sixth Circuit decisions address the mandate as a separate document.  In *Youghiogheny and Ohio Coal Co. v. Milliken*, 200 F.3d 942 (6th Cir. 1999), the Sixth Circuit stated:  "Unlike district courts, the courts of appeals direct the district courts and administrative agencies over which they have appellate or reviewing jurisdiction through mandates, not through orders and judgments."  *Youghiogheny and Ohio Coal Co.*, 200 F.3d at 951.  *"This is true even though in most cases the mandate simply consists of a certified copy of the judgment of the court of appeals, a copy of the court's opinion, and any directions regarding the taxation of costs."  Id.* (emphasis added).  "Although the issuance of the mandate is largely a formality, the court of appeals retains jurisdiction over the case until it issues, and the district court or agency whose

18

order is being reviewed cannot proceed in the interim." *Id*. at 951-952.  Also, in *United States v. Campbell*, 168 F.3d 263 (6th Cir. 1999), the Sixth Circuit stated:  "The mandate is the document by which [the Sixth Circuit] relinquishes jurisdiction and authorizes the originating district court or agency to enforce the judgment of this Court. The mandate issues 21 days after the entry of judgment and *consists of a certified copy of the original judgment, a copy of any opinion and any directions concerning costs*."  *United States v. Campbell*, 168 F.3d 263, 267 n.3 (6th Cir. 1999) (citing 6TH CIR. I.O.P. 41 (effective December 1, 1998)) (emphasis added).

Also, the practice of taxing costs was in accordance with, FED. R. APP. P. 39(a)(2), which directs that costs are to be taxed against the appellant when a lower court judgment is affirmed, unless the law or the court provides otherwise.  The Sixth Circuit Court of Appeals did not provide that the costs would not be taxed and plaintiff, in the current case, does not contest the imposition of costs, but, rather, the manner in which they were imposed.[10]

The March 5, 2004, mandate from the Sixth Circuit provides that costs of $1,619.25 were to be recovered by the appellee defendants.  Compl. App. B.  In light of the foregoing, the Court should agree with defendants that "a mandate issued by the court of appeals is a command or order, which a person is bound to obey." Mtn. Br. at 3.  Therefore, the Court should conclude that the mandate's provision for costs is enforceable.[11]

**3.      Plaintiff has not stated due process or First Amendment access to courts claims stemming from the removal of money from his account upon which relief may be**

---

[10]This conclusion is unchanged by plaintiff's statement that the amount at issue is "wrongfully payable to the [d]efendants in the prior dismissed federal civil rights case of [01-CV-00169 (*Skinner v. Jones*) / 03-1170 (*Skinner v. Jones*)]."  Rsp. at 1.

[11]In light of this conclusion, this report does not address defendants' argument that "[i]f a court's order is vague or unclear, the issuing court is the proper forum to seek clarification." Therefore, plaintiff should go to the Sixth Circuit Court of Appeals.  Mtn. Br. at 3.

**granted.  Furthermore, defendants are entitled to summary judgment on plaintiff's First Amendment retaliation and Fourth Amendment unreasonable seizure claims.**

**a.      Plaintiff's claims**

Plaintiff asserts his Fifth and Fourteenth Amendment due process right was violated by the taking of his property.  Compl. at 5.  He explains that his property was taken to prevent litigation against the defendants.  Compl. at 5.

Specifically, plaintiff claims that, on May 4, 2004, he received $41.92 income for serving as a school tutor during April 2004.  Plaintiff alleges that defendant Ford garnished 100% of this pay toward satisfaction of the aforementioned costs.  Compl. at 6 ¶ 30.[12]  Plaintiff claims that, on June 4, 2004, he received $41.92 income for serving as a school tutor, but defendant Ford garnished this pay in satisfaction of the mandate by defendants Govorchin and Wittman's direction.  Rsp. Affid. Skinner ¶ 8.  According to plaintiff, defendant Ford continually removes 100% of money or gifts credited to his account at defendants Govorchin and Wittman's direction in violation of MDOC policies and the PLRA (28 U.S.C. §1915(f)(b)(2)).  Compl. at 7 ¶ 31; Rsp. Affid. Skinner ¶ 9.[13]

Plaintiff claims the fraudulently misrepresented mandate has resulted in an atypical and significant hardship, exemplified by plaintiff's penniless status - rendered in retaliation to prevent plaintiff from financing another existing state court lawsuit against MDOC.  Compl. at 7

---

[12]Defendant Ford maintains that $41.92 was removed from plaintiff's account and sent to the attorney general's office on May 4, 2004.  Ford Affid. ¶ 7; Mtn. Ex. 2-C.

[13]Plaintiff claims that, as of September 8, 2004, defendants have garnished $214.63.  Compl. at 7 ¶ 31.  This figure was largely substantiated in defendant Ford's November 9, 2004 affidavit which lists the remaining balance as $1,402.63.  Ford Affid. ¶ 8.

According to a April 1, 2004 - November 2, 2004, trust account statement, there have been $313.40 in receipts and $164.20 in disbursements.  Mtn. Ex. 2-C, 2-E, 2-F, 2-G.  It is not clear why the disbursements are less than $214.63.

¶ 33; Rsp. at 2.[14]  Plaintiff claims that at the end of each month defendant Ford "places $9.00 dollars in [his] prison trust account for personal use, pursuant to [MDOC PD 04.02.105 ("Prisoner Funds") ¶ T][.]" Compl. at 7 ¶ 34.[15]  Allegedly, plaintiff uses this money toward his state court case, and "this leave[s] [him] with a zero sum balance in his prison trust account, having to suffer the personal embarrassment of begging and borrowing for personal hygiene utilities: soap, toothpaste, deodorant, etc, and cigarettes from fellow inmate[s] who sympathize with[] the [p]laintiff's hardship."  Compl. at 7 ¶ 35; Rsp. Affid. Skinner ¶ 14.

As to defendants Ford, Wolfenbarger and Wittman, plaintiff claims, they were induced by Govorchin to follow the mandate and "[p]laintiff suffered injury as a result of their negligent and reckless behavior."  Compl. at 8 ¶ 41.  Plaintiff claims he has a property interest in his account funds as set forth in MDOC PD 04.02.107 and MDOC PD 04.02.105.[16]  Compl. at 8 ¶ 42.  Plaintiff contends that defendants chose not to follow the policies' procedure regarding

---

[14]The Court assumes that plaintiff is referring to *Skinner v. MDOC*, Ingham County Circuit Court, Case No. 04-000184-MP-C30.  Rsp. Ex. (C)(7) [June 14, 2004 order suspending plaintiff's state court case]; Rsp. at 3.

[15]According to defendant Ford, "$9.00 remains in [plaintiff's] account after monies are forwarded to the Office of the Attorney General[,]" and MDOC PD 04.02.105 "is the authority for removal providing a minimum balance of $9.00 remains."  Ford Affid. ¶ 9.

[16]MDOC PD 04.02.105 ("Prisoner Funds") (effective Dec. 1, 2004) provides that "[a] fact-finding hearing shall be conducted pursuant to Administrative Rule 791.3310 before funds are removed from a prisoner's institutional account, except when due to one of more of the following: . . . [a] court order directing the Department to remove the funds from the prisoner's account."  *Id.* ¶ Q(1).

MDOC PD 04.02.107 ("Collection of Court-Ordered Victim Restitution/Filing Fees and Costs") (effective Dec. 19, 2003) provides that "[a] federal court order requiring a prisoner to pay costs allows the Department to remove funds from the prisoner's account to pay the costs[,]" and "[u]pon receipt of a court order requiring the Department to remove funds from a prisoner's account to pay court filing fees or costs, or receipt of a federal court order requiring a prisoner to pay costs, the Administrative Officer shall ensure that the funds are removed from the account in accordance with this policy and PD 04.02.105 unless otherwise specifically directed by the court."  *Id.* ¶¶ K, M.

removal of funds from a prisoner's account and garnished funds without an appropriate court

order.  Compl. at 9 ¶ 43.  Plaintiff contends that these defendants disregarded the policy

directives.  Because they did not exercise due care, he contends, he was denied due process.

Compl. at 9 ¶ 44; *see also* Compl. at 10 ¶ 56.  He claims they "knew, or should have known, that

fraud may have been taking place, or [that they were] perpetuat[ing] the alleged fraud itself."

Compl. at 9 ¶ 45.

Plaintiff claims that defendants "violated the Prison Litigation Reform Act[,]"

particularly 28 U.S.C. § 1915(f), because the 100% garnishment rate exceeds the 20% statutory

rate.  Compl. at  ¶¶ 47-49.  He also claims that defendants' actions violated 28 U.S.C. §

1915(b)(2).  Rsp. at 1-2.  Plaintiff claims that defendant Govorchin denied plaintiff receipt and

possession of funds credited to plaintiff's account to "frustrate a current litigating lawsuit, and

for other reasons other than those based upon legally relevant criteria[,]" resulting in a property

loss without due process of law.  Compl. at 10 ¶ 51.

**b.    Plaintiff's response to defendants' motion**

Plaintiff argues that "[t]he defendants' unauthorized collection of costs against plaintiff's

prison trust account, violated the spirit of the [PLRA]."  Rsp. at 10-11.  In addition to the

absence of a taxation provision in the Sixth Circuit's November 4, 2003 order, plaintiff claims

that "[d]efendants' recoupment of 100 percent of [his] funds for repayment of the taxable costs

violates the costs collection provisions of the in forma pauperis statute, 28 U.S.C. §

1915(f)(2)(a)."  Rsp. at 10.  As plaintiff points out, the in forma pauperis statute provides that

"[j]udgment may be rendered for costs at the conclusion of the suit or action[.]" 28 U.S.C. §

1915(f)(1).  Furthermore, "[w]hen judgment is entered against a prisoner and costs against the

prisoner are assessed, [28 U.S.C.] § 1915(f)(2)(A) now requires that the prisoner pay the costs either in full, or in accordance with the payment process set forth in [28 U.S.C.] § 1915(b)(2)." *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999). Plaintiff claims that, if costs had been assessed, defendants' recoupment of 100% of his income exceeds the 20% limitation in 28 U.S.C. § 1915. Rsp. at 11. Plaintiff maintains that defendants' argument that the Sixth Circuit did not order costs payable pursuant to 28 U.S.C. § 1915(f), therefore rendering the 28 U.S.C. § 1915(b)(2) formula inapplicable, is unsupported by the law, illogical, and irreconcilable with 28 U.S.C. § 1915(f)'s text. Furthermore, the argument contradicts the language of defendants' bill of costs (which described removal of funds in accordance with the PLRA and MDOC policy). Rsp. at 11. Plaintiff claims that defendants were not acting under a court order and did not adhere to 28 U.S.C. § 1915(f)(b)(2)'s scheme. Rsp. at 11.[17]

Plaintiff argues that "[t]he defendants' unauthorized collection of costs violated plaintiff's Fourth Amendment right and his liberty interest under the Fourteenth Amendment." Rsp. at 12-14. Plaintiff contends that Administrative Rule 791.268[18] sets forth a state-created

---

[17]Plaintiff claims that defendants knew "they were required to act pursuant to a court order, before removing funds from a prisoner's trust account." Rsp. at 11a. Plaintiff claims that (1) Magistrate Judge Scoville's February 18, 2003 to proceed in forma pauperis and for payment of filing fee on appeal; (2) my October 13, 2004 order denying plaintiff in forma pauperis status in the instant case; and (3) the June 14, 2004 order suspending plaintiff's state court case support the argument that "[d]efendants had established a policy, custom and practice of removing funds pursuant to a court order, and that the federal and state court[s] do not label [orders as mandates directing the parties]." Rsp. at 11a. Plaintiff claims that defendant Govorchin "went out of his way to induce the MDOC to act upon his direction to enforce the misrepresented mandate," because he sent a letter requesting that the mandate be processed even though under 28 U.S.C. § 1915(b)(2) this would have been done by the Court clerk. Rsp. at 11a.

[18]"If a prisoner is ordered by a court to make monthly payments for the purpose of paying the balance of filing fees or costs under section 2963 of the revised judicature act of 1961, Act No.
(continued...)

23

procedural right and that this rule is incorporated in MDOC PD 04.02.107. In support of this argument, plaintiff contends that both the rule and the policy directive contain mandatory language. Rsp. at 12. Plaintiff also contends that MDOC PD 02.04.105 sets forth a state created procedural right. Plaintiff claims that administrative rule 791.268 and MDOC Policy Directives 04.02.107 and 04.02.105 provide a specific outcome and contain mandatory language; therefore, there is a property interest. Plaintiff claims he "has a due process right to have the Attorney General and prison[] officials[] act pursuant to a certified court order before removing funds from his prison trust account." Plaintiff also claims that defendants did not first determine that "the removal of funds from his prison trust account be upon the direction of a certified court order. Therefore, [they] violated [his] due process rights[.]" Rsp. at 13. Plaintiff claims that defendants' application of MDOC PD 04.02.107 was done to defeat protected property interests and that defendants willfully refused to abide by state law. Citing *Hudson v. Palmer*, 468 U.S. 517 (1984), plaintiff contends that "postdeprivation remedies do not satisfy due process where a deprivation of property is caused by conduct pursuant to established state procedure, rather than random and unauthorized action." Rsp. at 14 (citing *Hudson v. Palmer*, 468 U.S. 517, 532 (1984).

As to his Fourth Amendment unreasonable seizure claim, plaintiff contends that he was deprived of a Fourth Amendment liberty interest where defendants illegally seized funds to

---

[18](...continued)
236 of the public acts of 1961, being section 600.2963 of the Michigan Compiled Laws, the department shall remove those amounts from the institutional account of the prisoner subject to the order and, when an amount equal to the balance of the filing fees or costs due is removed, remit that amount as directed in the order." Mich. Comp. Laws § 791.268.

satisfy an unauthorized debt and to interfere with funding of his state court lawsuit, and where

state law and prison policies limit defendants' discretion by the imposition of a prerequisite to

removing funds (creating "a protected liberty interest in a prisoner[] being free from

unreasonable seizure.").  Rsp. at 13-14.

Plaintiff's response also speculates about defendants' motive for enforcing the mandate.

Plaintiff claims that he informed defendant Wolfenbarger about defendant Govorchin's

fraudulent description of the mandate and Wolfenbarger said he would investigate the matter.

Rsp. Affid. Skinner ¶ 10.  According to plaintiff, all four defendants removed money from

plaintiff's account "with the malice intent to cut-off the flow of funds to support Plaintiff's

pending lawsuit in state court against prison officials."  Rsp. Affid. Skinner ¶ 11.  Such

interference also effects his subscription and book orders which are to be used as evidence in the

state court case.  Rsp. Affid. Skinner ¶¶ 11-12.

Plaintiff contends that defendant Govorchin wishes to suppress this information in the

state court case.  Rsp. Affid. Skinner ¶ 12.  He also claims that defendant Govorchin is trying to

obstruct the litigation in plaintiff's dismissed federal case, to obfuscate defendant Govorchin and

Assistant Attorney General Mark Matus' potential perjury.  Rsp. at 2.  Plaintiff claims that

defendant Govorchin intends to chill plaintiff's First Amendment right of access to courts in his

state court case which challenges prison policy.  Rsp. at 2-3.  Plaintiff claims that a state court

finding that the subject prison policy is invalid under Michigan law will result in his previous

federal case being reopened and incidents of perjury being revealed.  Rsp. at 3.  According to

plaintiff, defendant Govorchin wishes to prevent this occurrence by misrepresenting the mandate

- resulting in obstruction of his state court case by stopping the flow of plaintiff's financing of

the state case.  Rsp. at 3.  Plaintiff claims that his First Amendment rights of expression and access to courts will be suppressed in March and April 2005 when his funds for subscriptions and book orders - evidence in the state court case - will be depleted.  Rsp. Affid. Skinner ¶ 13.

According to plaintiff, "[d]efendants' actions have the [e]ffect of strip[p]ing [p]laintiff of his last dollar, and unable to pay motion fees (relative to the state lawsuit), and provide hygiene product and cigarette for himself, leaving [p]laintiff pennyless in his prison environment."  Rsp. Affid. Skinner ¶ 15.  He claims to have gained thirty (30) pounds, because he "is unable to buy a good pair of gym shoe[s] to continue his exercises[.]" Rsp. Affid. Skinner ¶ 16.  Also, he claims that communication with his family has been effected.  Rsp. Affid. Skinner ¶ 17.

**c.      28 U.S.C. § 1915 ("Proceedings in forma pauperis")**

Prisoners are allowed to file lawsuits despite lack of funds to pay filing fees if they file in forma pauperis.  *See* 28 U.S.C. § 1915.  This statute dictates that the prisoner will pay the full amount of appellate filing costs when funds exist, and those funds will be taken at a rate of 20 percent of the average monthly balances or deposits (whichever is greater).  *See* 28 U.S.C.§ 1915(b)(1).  As previously noted, plaintiff proceeded in forma pauperis on appeal in his prior federal case; therefore, 28 U.S.C. § 1915 would apply.

In part, 28 U.S.C. § 1915 provides: "If the judgment against a prisoner includes the payment of costs under this subsection, the prisoner shall be required to pay the full amount of the costs ordered."  28 U.S.C. § 1915(f)(2)(A).  "The prisoner shall be required to make payments for costs under this subsection in the same manner as is provided for filing fees under subsection (a)(2)."  28 U.S.C. § 1915(f)(2)(B).

Here, it is important to note that "Section 1915(f)(2)(B) mistakenly refers to § 1915(a)(2) as the authoritative subsection for the payment process. However, § 1915(a)(2) does not contain a payment procedure. The payment process is located in § 1915(b)(2)." *In re Prison Litigation Reform Act*, 105 F.3d 1131, 1138 (6th Cir. 1997).

28 U.S.C. § 1915(b)(2) provides that "[a]fter payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid." 28 U.S.C. § 1915(b)(2).

**d.     Analysis**

Plaintiff claims that there is a genuine issue of material fact regarding whether defendants "defeated Plaintiff's property interest" and "failed to comply with its own procedural requirement", resulting in Fourth and Fourteenth Amendment violations.  Rsp. at 14.  For the following reasons, the Court should conclude that plaintiff has not stated a due process claim or a First Amendment access to courts claim upon which relief may be granted.

**i.     Due process**

To the extent plaintiff claims that defendants have violated 28 U.S.C. § 1915(b)(2) or 28 U.S.C. § 1915(f)(2)(A), by taking funds at a 100% rate as plaintiff alleges (Compl. at 5), this would not give rise to a due process claim.  The Supreme Court has recognized that negligent deprivation of an inmate's property does not violate due process if the state provides an adequate remedy to redress the wrong.  *Parratt et. al. v. Taylor*, 451 U.S. 527, 537 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 328 (1986) (negligence does not amount to a

27

"depravation" at all, thus the Due Process Clause is not implicated). Likewise, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). In asserting a violation of procedural due process, a plaintiff must plead and prove that available state procedures for redressing the wrong are not adequate. *Vicory v. Walton*, 721 F.2d 1062, 1065-66 (6th Cir. 1983); *see also, Wilson v. Beebe*, 770 F.2d 578, 584 (6th Cir. 1985) (en banc).

To the extent that plaintiff alleges that he was deprived of his property by prison officials, Michigan's three-step grievance system provides state prisoners with an adequate procedure to challenge actions taken by prison officials. *See* MDOC PD 03.02.139 ("Prisoner/Parolee Grievances"), effective 12/19/03, ¶¶ X-II. Furthermore, Michigan law allows for judicial review of administrative decisions in the state courts. *DeWalt v. Warden, Marquette Prison*, 315 N.W.2d 584, 585 (Mich. Ct. App. 1982); *see* Mich. Comp. Laws §§ 791.251 et seq.[19] Additionally, Michigan's state remedies have been held to be adequate under federal due process standards. *Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995); *Branham v. Spurgis*, 720 F. Supp. 605, 608 (W. D. Mich. 1989).[20] In short, "plaintiff has not shown that no adequate

---

[19]Chapter 791 of the Michigan Compiled Laws governs criminal procedure and section 51 governs prisoner hearings.

[20]"Michigan provides several adequate post-deprivation remedies, including Michigan Court Rule 3.105 that allows an action for claim and deliver, Mich. Comp. Laws § 600.2920 that provides for a civil action to recover possession of or damages for goods and chattels unlawfully taken or detained, and Mich. Comp. Laws § 600.6401, the Michigan Court of Claims Act, which establishes a procedure to compensate for alleged unjustifiable acts of state officials. Furthermore, as a state agency subject to the Michigan Administrative Procedures Act, Mich. Comp. Laws §§ 24.201--.403,
(continued...)

postdeprivation state remedy was available," and therefore he has not alleged a violation of his

procedural due process rights so as to enable him to state a § 1983 claim.  *Barnier v.*

*Szentmiklosi*, 810 F.2d 594, 600 (6th Cir. 1987).

Because Michigan provides plaintiff with adequate post-deprivation remedies for the loss

of his property, the unauthorized deprivation of his property by prison officials would not rise to

the level of a violation of due process.  *Harrington v. Grayson*, 811 F. Supp. 1221, 1225 (E.D.

Mich. 1993) ("An unauthorized negligent or intentional deprivation of property does not rise to

the level of a violation of the due process clause under the Fourteenth Amendment where the

state has provided the aggrieved party with an adequate postdeprivation remedy.") (citing cases).

Plaintiff cannot maintain an action in federal court against the defendants for the confiscation of

his property.[21]

### ii.    First Amendment access to courts

To the extent plaintiff is alleging a violation of his First Amendment right of access to

courts, such claims should be dismissed for failure to state a claim.  A prisoner asserting a denial

of access to courts claim must satisfy the constitutional standing requirement by alleging an

actual injury.  *See Lewis v. Casey,* 518 U.S. 343, 349, 351-53 (June 24, 1996).  To meet this

requirement, a plaintiff must show that the actions of the prison officials "hindered the prisoner's

---

[20](...continued)
the Department of Corrections is subject to numerous state laws relating to prisoner grievances.
Mich. Comp. Laws §§ 791.251--.255."  *Copeland*, 57 F.3d 476 at 480.

[21]As to plaintiff's claim that the deprivation was caused by an established state procedure,
such as MDOC PD 04.02.107, thereby making a state remedy irrelevant, this report concludes that
the mandate's inclusion of costs was enforceable.  Therefore, the process plaintiff was due was in
preparation of the mandate, not its execution pursuant to an enforceable provision in a mandate.
Rsp. at 14.

29

efforts to pursue a nonfrivolous claim." *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996); *accord Lewis*, 518 U.S. at 353; *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996); *Stewart v. Block*, 938 F.Supp. 582, 586 (C.D. Cal. 1996) (plaintiff must show "a specific instance in which he was actually denied access to the courts.") (internal quotation omitted).  Further, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354.  The right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines," and thus the right is limited to safeguarding prisoners' ability "to attack their sentences, either directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 355.

Plaintiff was a party to two cases in the United States District Court for the Western District of Michigan which apparently challenged the conditions of his confinement, *Lewis*, 518 U.S. at 355: (1) *Skinner v. Jones*, 01-CV-00169-RHB-JGS [Prisoner: Civil Rights] and (2) *Skinner v. Bolden*, 02-CV-00765-RHB-JGS [Prisoner: Civil Rights].  Furthermore, plaintiff has referenced his state court case *Skinner v. MDOC*, Ingham County Circuit Court, Case No. 04-000184-MP-C30 which allegedly takes issue with a prison policy.  Rsp. at 2-3.

However, under *Lewis,* dismissal is appropriate where a prisoner fails to allege a specific, litigation-related detriment.  *See Pilgrim v. Littlefield*, 92 F.3d 413, 417 (6th Cir. 1996).  *See also Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999);[22] *Baker v. Wells*, No. 01-2532, 2002 WL

---

[22]"Apart from his conclusory statement that the defendants impaired his right of access, Boswell does not explain how he suffered harm.  He does not allege that the incoming letter pertained to ongoing or anticipated litigation challenging either his sentence or the conditions of his confinement[]; also, he never mentions the contents of the letter.  He does not allege that, by opening the letter in his absence, the defendants affected his access to the courts." *Boswell*, 169 F.3d at 387 (internally citing *Lewis*, 518 U.S. at 355).

927021, **2 (6th Cir. 2002) (unpublished).[23]  As described above, plaintiff's response states that "[t]he transaction among the [d]efendants [was] structured [to retaliate and frustrate] a pending [state court lawsuit against the MDOC]."  Rsp. at 2.  The response further states that defendant Govorchin has attempted to obstruct the litigation of or interfere with *Skinner v. Jones* (Case No. 01-CV-00169), because of potential perjury committed by defendant Govorchin and his associate counsel.  Rsp. at 2.  Plaintiff alleges that a finding by the state court that the subject prison policy is invalid will reopen *Skinner v. Jones* (Case No. 01-CV-00169) and reveal incidents of perjury.  Rsp. at 3.  According to plaintiff, defendant Govorchin is "cutting-off the flow of Plaintiff's funds towards the ancillary cost of filing and litigating of [his] state case."  Rsp. at 3.  Furthermore, in an affidavit, plaintiff claims that defendants' removal of funds interferes with the financing of his state court case; specifically states that defendant Govorchin seeks to suppress the state court evidence by removing funds from plaintiff's account; and specifically states that his First Amendment rights of expression and access to courts will be suppressed in March and April 2005 when his funds for subscriptions and book orders - evidence in the state court case - will be depleted.  Rsp. Affid. Skinner ¶¶ 11-13.

Although plaintiff makes specific allegations regarding defendants' frustration of *Skinner v. MDOC*, Ingham County Circuit Court, Case No. 04-000184-MP-C30, he has not alleged an actual injury.  The case was suspended on June 14, 2004 by an order that also set forth terms for payment of the filing fee pursuant to Mich. Comp. Laws § 600.2963 and directed that a copy of the order would be forwarded to the MDOC facility at which plaintiff was incarcerated.  The

---

[23]"He did not allege how the opening of his mail outside his presence prejudiced any legal proceeding. []Baker utterly failed to show how the loss of his word processor had prejudiced any legal action."  *Baker v. Wells*, No. 01-2532, 2002 WL 927021, **2 (6th Cir. 2002) (unpublished).

order also set forth terms for resubmission of case documents "within 21 days of this order[.]" Otherwise, the case would be dismissed.  Rsp. Ex. (C)(7).  The time for revival of plaintiff's state court case had well passed by the time of his January 31, 2005 response (dated on January 12, 2005) to defendants' motion.[24]  Therefore, the status of his state court case is not clear.

Right now it appears that the June 14, 2004 order was entered because plaintiff did not have the filing fee with the complaint, and plaintiff does not argue that the withdrawals beginning in April 2004 resulted in the June 14, 2004 order of suspension.  Furthermore, at the time of the filing of plaintiff's response, his projection that he would run out of funds in March or April 2005 was an educated guess - speculation about an injury resulting from the alleged actions, not actual.  Plaintiff's latest filing in this case is his January 31, 2005 response, and the latest docket item in this case is defendants' February 14, 2005 reply.  Without substantiation of plaintiff's claim that the withdrawals did, in fact, result in an injury to plaintiff's state court case and that his allegation is more than a potential to run out of money, survival of a First Amendment access to courts claim against defendants is inappropriate.

In light of the foregoing, plaintiff has failed to state an access of courts claim upon which relief may be granted.

### iii.    First Amendment retaliation

As previously noted, plaintiff alleges that defendants' fraudulent misrepresentation had the retaliatory objective of interfering with the financing of his state court lawsuit [*Skinner v. MDOC*, Ingham County Circuit Court, Case No. 04-000184-MP-C30] and his other federal

---

[24]Plaintiff's affidavit attached to his response is dated January 26, 2004.  It is assumed that this is a typographical error.

lawsuit [*Skinner v. Jones*, Case NO. 01-CV-00169 (Grand Rapids)].  Compl. at 7 ¶ 33.  He

claims that defendants' removal of money from his account was done with the intent to terminate

funds to support the state court lawsuit.  Rsp. Affid. Skinner ¶ 11.

The elements of a retaliation claim under the First Amendment standard are "...(1) the

plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that

would deter a person ordinary firmness from continuing to engage in that conduct; and (3) there

is a causal connection between elements one and two–that is, the adverse action was motivated at

least in part by the plaintiff's protected conduct."  *Thaddeus-X v. Blatter,* 175 F.3d at 394, citing

*Bloch v. Ribar,* 156 F.3d 673, 678 (6th Cir. 1998); *Lewis v. ACB Business Services, Inc.,* 135 F.3d

389, 406 (6th Cir. 1998); *Penny v. United Parcel Serv.,* 128 F.3d 408, 417 (6th Cir.1997); and

*Yellow Freight Sys., Inc. v. Reich,* 27 F.3d 1133, 1138 (6th Cir. 1994).

A detailed analysis on this issue is unnecessary.  Even if all of these elements existed

(i.e., engagement in the other lawsuits was protected conduct, the removal of funds was an

adverse action, and the removal of funds was caused by plaintiff's engagement in the other

lawsuits), "[i]f the defendant can show that he would have taken the same action in the absence

of the protected activity, he is entitled to prevail on summary judgment."  *Thaddeus-X* at 399.

Notwithstanding plaintiff's allegations, there is no credible reason to believe that defendants

were not acting simply to recover costs awarded to them in *Skinner v. Jones*, Case No. 01-CV-

00169 (Grand Rapids) - and would have done so even in the absence of the other lawsuits.

### iv.    Fourth Amendment

To the extent plaintiff claims that his Fourth Amendment right has been violated, his

claim should be dismissed.  Assuming that the Fourth Amendment right against search and

33

seizure applies in the prison setting,[25] and even assuming that the removal of money from his prison account was a seizure under the Fourth Amendment, the seizure was not unreasonable, because the costs provision in the mandate was enforceable.

**4.      Defendant Govorchin is entitled to absolute immunity.**

Defendants argue that defendant Govorchin is "absolutely immune from liability as an assistant attorney general acting within the scope of his employment."  Mtn. Br. at 5-6.  In response, plaintiff argues that "[d]efendant Govorchin is not entitle[d] to absolute immunity[.]" Rsp. at 19-21.  Plaintiff maintains that defendant "Govorchin has not provided any evidence to support a finding as a matter of law that his actions of obtaining money under false pretenses . . . [were] a function in advocating for the [S]tate of Michigan; falling within the protection of absolutely immunity."  Citing *Imbler*, plaintiff contends that defendant Govorchin "was not initiating or pursuing a criminal prosecution[][;]" therefore, he was not participating in an "integral part of the judicial process."  Rsp. at 20 (citing *Imbler v. Pachtman*, 424 U.S. 409, 430

---

[25]*See Hudson v. Palmer*, 468 U.S. 517, 528 n.8 (1984) ("Assuming that the Fourth Amendment protects against the destruction of property, in addition to its mere seizure, the same reasons that lead us to conclude that the Fourth Amendment's proscription against unreasonable searches is inapplicable in a prison cell, apply with controlling force to seizures."); *Bell v. Wolfish*, 441 U.S. 520, 557 (1979) ("Assuming, *arguendo*, that a pretrial detainee retains such a diminished expectation of privacy after commitment to a custodial facility, we nonetheless find that the room-search rule does not violate the Fourth Amendment.") at 558 ("assuming for present purposes that inmates, both convicted prisoners and pretrial detainees, retain some Fourth Amendment rights upon commitment to a corrections facility, we nonetheless conclude that these searches do not violate that Amendment.") (internal citation omitted); and *Lanza v. New York*, 370 U.S. 139, 143-144 (1962) ("Though it may be assumed that even in a jail, or perhaps specially there, the relationships which the law has endowed with particularized confidentiality must continue to receive unceasing protection, there is no claimed violation of any such special relationship here.") (internal footnote omitted).

(1976)).  He alleges that defendant Govorchin maliciously and dishonestly deprived him of his

property.  Also, he points out that there is no affidavit from defendant Govorchin.  Rsp. at 21.

a.       **Absolute immunity generally**

"Absolute immunity from liability has been accorded to a few types of government

officials whose duties are deemed as a matter of public policy to require such protection to

enable them to function independently and effectively, without fear or harassment."  *Barrett v.*

*United States*, 798 F.2d 565, 571 (2d Cir. 1986).  "These include the President of the United

States, judges, legislators, prosecutors, and high executive officers engaged in adjudicative or

quasi-judicial functions."  *Barrett*, 798 F.2d at 571 (internal citations omitted).

"In determining whether particular actions of government officials fit within a

common-law tradition of absolute immunity, or only the more general standard of qualified

immunity, we have applied a 'functional approach,' which looks to 'the nature of the function

performed, not the identity of the actor who performed it[.]'"  *Buckley v. Fitzsimmons*, 509 U.S.

259, 269 (1993) (internal citations omtted).  In *Mitchell v. Forsyth*, 472 U.S. 511 (1985), "the

Court pointed to three factors to be considered in determining whether a government official

should be given absolute immunity for a particular function: (1) whether a historical or common

law basis exists for immunity from suit arising out of performance of the function; (2) whether

performance of the function poses obvious risks of harassing or vexatious litigation against the

official, and (3) whether there exist alternatives to damage suits against the official as a means of

redressing wrongful conduct."  *Barrett*, 798 F.2d at 571 (citing *Mitchell*, 472 U.S. at 521-522).

"[T]he official seeking absolute immunity bears the burden of showing that such

immunity is justified for the function in question."  *Burns v. Reed*, 500 U.S. 478, 486 (1991).

35

"The presumption is that qualified rather than absolute immunity is sufficient to protect

government officials in the exercise of their duties."  *Id.*

**b.      Analysis**

In support of their argument, defendants rely primarily on the case of *Brown v. State of*

*Tennessee Department of Labor and Workforce Development, Division of Workers'*

*Compensation*, 64 Fed.Appx. 425, 426, 2003 WL 1795899 (6th Cir. 2003) (unpublished).  In

*Brown*, the Sixth Circuit stated:

> As the Attorney General was an "advocate" for the state by defending the state in
> Brown's civil action in state court, the Attorney General's actions were
> "intimately associated with the judicial phase" of the civil process.  Thus, the
> Attorney General is entitled to absolute immunity in Brown's civil rights action.
> *See Prince v. Hicks*, 198 F.3d 607, 611 (6th Cir.1999).[26] Therefore, Brown's
> claims against the Attorney General are meritless.

*Brown*, 2003 WL 1795899, **1.  Defendants also rely upon *Jacobs v. Horn*, No. 91-4043, 1993

WL 30499 (6th Cir. 1993) (unpublishesd) (applying absolute immunity to state assistant attorney

general for claims based upon actions taken in prior prisoner civil rights case).

Plaintiff takes issue with *Brown*, because, he contends, it (1) incorrectly describes Sixth

Circuit absolute immunity law as applicable to the civil process; (2) applies an absolute

immunity test contrary to United States Supreme Court precedent, defendants' reliance upon

which leaves plaintiff without civil redress against defendant Govorchin for the deprivation of

plaintiff's property; and (3) is an unpublished case.  Rsp. at 20-21.

However, even though *Brown* and *Jacobs* are unpublished cases, other circuits have

extended the protection of absolute immunity to government attorneys for their roles in

---

[26]In *Prince*, plaintiff brought a civil suit against a prosecutor for actions in a criminal
prosecution.  *Prince*, 198 F.3d at 609-610.

defending civil suits.  *See Barrett v. United States*, 798 F.2d 565, 572 (2d Cir. 1986) ("It is urged that these factors [the *Mitchell* factors] do not call for the same result when the government attorney defends a civil suit. We disagree."); *Murphy v. Morris*, 849 F.2d 1101, 1105 (8th Cir. 1988) ("a state assistant attorney general's function as a government advocate entitles him or her to absolute immunity from suit for damages."); *Fry v. Melaragno*, 939 F.2d 832, 837 (9th Cir. 1991) ("the principles outlined in *Butz* [*v. Economou*, 438 U.S. 478 (1978)] should a fortiori apply to the government attorney's initiation and handling of civil litigation in a state or federal court. Whether the government attorney is representing the plaintiff or the defendant, or is conducting a civil trial, criminal prosecution or an agency hearing, absolute immunity is 'necessary to assure that ... advocates ... can perform their respective functions without harassment or intimidation.'") (citing *Butz*, 438 at 512).  *See also Al-Bari v. Winn*, No. 89-5150, 1990 WL 94229, **1 (6th Cir. 1990) (unpublished) ("government attorneys who undertake the defense of a civil suit enjoy the same absolute immunity as that enjoyed by government prosecutors.") (referencing *Murphy* and *Barrett*).

Plaintiff is correct that defendants Govorchin and Wittmann did not provide the Court with an affidavit supporting their claim that they were "merely enforcing the Sixth Circuit's Order." Rsp. at 7 (citing Mtn. Br. at 2).[27]  However, even in the absence of an affidavit from defendant Govorchin, his November 12, 2003 submission of a bill of costs to the Sixth Circuit and his March 8, 2004 letter to defendant Wittmann requesting that she process the March 5, 2004 mandate can fairly be said to have been actions taken during his function as an advocate in

---

[27]Plaintiff claims that defendants Govorchin and Wittmann purposely did not provide an affidavit to avoid making the representation on the record.  Rsp. at 7.

37

defending the civil suit.  Therefore, in light of the foregoing, the Court should agree with defendants that "[a]s an advocate for the defendants-appellees in that case, [d]efendant Govorchin was acting within the scope of his duties[,]" and is entitled to absolute immunity. Mtn. Br. at 5-6.

**5.      Plaintiff's claims against Wolfenbarger based upon his denial of plaintiff's grievance and his supervisory role as warden should be dismissed.**

**a.      Parties' arguments**

As previously noted, defendant Wolfenbarger responded to plaintiff's Step II grievance on July 26, 2004.  Defendant Wolfenbarger responded that the Step I grievance response "accurately addressed [plaintiff's] concerns.  The money is mandated to be taken by a court order.  No further response warranted.  Grievance denied."  Compl. App. A.  In plaintiff's Step III grievance appeal, plaintiff argued that defendant Wolfenbarger "failed to remedy or protect me from the alleged unconstitutional violations of [Govorchin, Wittmann, and Ford] explained in the first step of the grievance process."  Compl. App. A.

In his complaint, plaintiff claims that defendant Wolfenbarger, the person designated to address Step II grievance appeals, "failed to correct the unconstitutional harm and protect [p]laintiff from the [d]efendants' [Govorchin, Wittman, and Ford's] fraudulent acts which resulted in the deprivation of [p]laintiff's property."  Compl. at 9, 11 ¶¶ 46, 61.  Alternatively, plaintiff complains that his Fourth and Fourteenth Amendment rights have been violated. Compl. at 11 ¶ 62.

Defendants argue that "[a] prison official whose only involvement in a matter is responding to a prisoner grievance is not so personally involved in the matter to subject him to Section 1983 liability."  Defendants contend that "[d]efendant Warden Wolfenbarger's only

38

involvement in this matter was in responding to plaintiff's Step II prison grievance."  Mtn. Br. at 6.

In response, plaintiff argues that "[d]efendant Wolfenbarger has an affirmative link to the constitutional violation against plaintiff."  Rsp. at 18-19.  According to plaintiff, defendant Wolfenbarger "was under a positive legal duty to supervise the governance and policy of his institution and to enforce all orders and regulations of the [MDOC].  Thus, [he] was responsible for compliance with the prison Policy Directives."  Rsp. at 18 (citing Administrative Rule 791.2205).  Rsp. at 18.  Furthermore, plaintiff argues, defendant Wolfenbarger hears grievance appeals and had a duty under MDOC PD 03.03.130 "to conduct an investigation to determine whether there was merit to Plaintiff's appeal[.]" Rsp. at 18.  According to plaintiff, he directly communicated to defendant Wolfenbarger about defendant Govorchin's removal of prisoner account funds "without a court order, and under false pretenses, in violation of prison policies."  Rsp. at 18-19.  Therefore, plaintiff claims, defendant Wolfenbarger was on notice of the constitutional violations and should have investigated further.  Rsp. at 19.  The failure to investigate further, plaintiff contends, "constituted reckless disregard of [his] rights and encouraged the specific incident of misconduct."  Rsp. at 19.

**b.      Personal involvement generally**

Liability in a § 1983 action cannot be based on a theory of *respondeat superior.  See Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978).  "[T]he mere right to control without any control or direction having been exercised and without any failure to supervise is not enough to support § 1983 liability."  *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 n.58 (1978), citing *Rizzo v. Goode*, 423 U.S. 362, 370-371 (1976).

As the Sixth Circuit has stated:

"Section 1983 liability will not be imposed solely upon the basis of respondeat
superior.  There must be a showing that the supervisor encouraged the specific
incident of misconduct or in some other way directly participated in it.  *At a
minimum, a § 1983 plaintiff must show that a supervisory official at least
implicitly authorized, approved or knowingly acquiesced in the unconstitutional
conduct of the offending subordinate.*"

*Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 81 (6th Cir. 1995) (quoting *Bellamy v.

Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (emphasis added)) (emphasis by *Taylor* court); *see

also*, *Monell*, 436 U.S. at 693-95; *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989); *Dunn v.

Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982).

Furthermore, an allegation that a supervisor was aware of an actionable wrong committed

by a subordinate and failed to take corrective action "is insufficient to impose liability on

supervisory personnel under § 1983."  *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988).  As the

*Haydon* court stated: "A supervisory official's failure to control, or train the offending individual

is not actionable, unless the supervisor 'either encouraged the specific incident or in some other

way directly participated in it.'" *Haydon*, 853 F.2d at 429 (quoting *Hays v. Jefferson County,

Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)).

**c.    Analysis**

Plaintiff's claims against defendant Wolfenbarger that are based upon his denial of the

grievance or his role as warden of the prison should be dismissed for lack of personal

involvement.  First, it is fair to say that plaintiff's claims against the warden are based upon his

response to plaintiff's Step II grievance appeal.  As previously noted, plaintiff claims that

defendant Wolfenbarger, the person designated to address Step II grievance appeals, "failed to

correct the unconstitutional harm and protect [p]laintiff from the [d]efendants' [Govorchin,

40

Wittman, and Ford's] fraudulent acts which resulted in the deprivation of [p]laintiff's property."

Compl. at 9, 11 ¶¶ 46, 61.  Claims which are based simply on the denial of a grievance do not

state a claim of constitutional dimension.  *See Martin v. Harvey*, No. 00-1439, 2001 WL 669983,

**2 (6th Cir. 2001) (unpublished) ("The denial of the grievance is not the same as the denial of a

request to receive medical care."); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (as

against defendants whose only involvement was the denial of administrative remedies and the

"failure to remedy the alleged retaliatory behavior[,]" "[t]here is no allegation that any of these

defendants directly participated . . . in the claimed . . . acts[]."); *Weaver v. Toombs*, 756 F.Supp.

335, 337 (W.D. Mich. 1989) ("The mere fact that these defendants found plaintiff Martin's

grievance concerning the seizure to be without merit is insufficient to state a claim against

them.").

Second, in his response to defendants' motion, plaintiff argues that defendant

Wolfenbarger "was under a positive legal duty to supervise the governance and policy of his

institution and to enforce all orders and regulations of the [MDOC].  Thus, [he] was responsible

for compliance with the prison Policy Directives."  Rsp. at 18 (citing Administrative Rule

791.2205).  Rsp. at 18.  Plaintiff also argues that defendant Wolfenbarger is "a supervisory

official [who] at least implicitly authorized, approved or knowingly acquiesced in the

unconstitutional conduct."  Rsp. at 19 (citing *Bellamy*, 729 F.2d at 421 and *Taylor*, 69 F.3d at

81).  To the extent this argument is unrelated to defendant Wolfenbarger's denial of plaintiff's

grievance and is based upon supervisory liability for his role as MRF's warden, "the § 1983

liability of supervisory personnel must be based on more than the right to control employees."

*Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (citing *Hays v. Jefferson County*, 668 F.2d

41

869 (6th Cir. 1982)).  *See also Turner v. City of Taylor*, 412 F.3d 629 (6th Cir. June 15, 2005);

*Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. June 8, 2005).[28]

Therefore, even if plaintiff has not exhausted his administrative remedies as to his claims

against Wolfenbarger, the Court should dismiss plaintiff's claims against Wolfenbarger that are

based upon his response to the Step II grievance appeal or his supervisory role as the warden of

MRF pursuant to 1997e(c)(2).[29]

---

[28]Such a supervisory argument against defendant Wolfenbarger (not based upon denial of a grievance) is not analogous to *Taylor*, 69 F.3d at 80, where the Court held that "[a] genuine issue of material fact exists about [Warden] Foltz's awareness of his subordinates' failure to review properly transfer orders." In *Taylor*, "Foltz [was] charged with abandoning the specific duties of his position--adopting and implementing an operating procedure that would require a review of the inmate's files before authorizing the transfers-- in the face of actual knowledge of a breakdown in the proper workings of the department." 69 F.3d at 81.  Here, any claim made by plaintiff against defendant Wolfenbarger that is unrelated to Wolfenbarger's denial of plaintiff's grievance, such as a claim that defendant Wolfenbarger was not heeding his duty to ensure compliance with policy directives, is not based upon Wolfenbarger's actual knowledge that there was a breakdown in the proper enforcement of the administrative rule and policy directive.  This interpretation is buttressed by defendant Wolfenbarger's representation that he has "no personal knowledge of or involvement in the specific actions which form a basis to [p]laintiff's complaint."  Mtn. Ex. 1 [Wolfenbarger Affid.] at ¶ 3.

[29]With regard to the dismissal of prisoner lawsuits, 42 U.S.C. § 1997e(c) provides:

(1) The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

(2) In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.

42 U.S.C. § 1997e(c)(1)-(2). "Federal courts should not adjudicate any such claim until after exhaustion unless the complaint satisfies § 1997e(c)(2)." *Brown*, 139 F.3d at 1104.

**6.      The Court should decline to exercise supplemental jurisdiction over plaintiff's state-law fraudulent conveyance claims.**

**a.      Plaintiff's claims**

Plaintiff appears to allege violations of several state statutes, such as the Michigan Uniform Fraudulent Conveyance Act (*see* Mich. Comp. Laws § 566.11); Mich. Comp. Laws § 600.2920(1) ("Actions to recover possession of goods and chattels"); Mich. Comp. Laws § 2919a; and Mich. Comp. Laws § 750.218 ("Use of false pretenses with intent to defraud; enhanced sentencing") to assert that defendants used false pretenses to convey his property. Compl. at 4-5.[30]

Plaintiff claims that defendant Govorchin misrepresented the mandate in his March 8, 2004 letter as a garnishment order, thereby "obtaining [p]laintiff's money under false pretenses." Compl. at 7 ¶ 36.  Furthermore, plaintiff claims that defendant Govorchin "fraudulently induced [d]efendants Wolfenbarger, Wittmann and Ford into assenting to and performing under the '[m]andate[.]'" Compl. at 8 ¶ 37.  Plaintiff contends that defendant Govorchin knew the consequences of requesting that Wittmann process the mandate and that defendants fraudulently converted plaintiff's property by "convert[ing] [the] asset of money from [p]laintiff's prison trust account into the account of the Michigan Attorney General Office."  Compl. at 8 ¶¶ 38-39.

---

[30]"A person who, with the intent to defraud or cheat makes or uses a false pretense to do 1 or more of the following is guilty of a crime punishable as provided in this section: . . . Obtain from a person any money or personal property or the use of any instrument, facility, article, or other valuable thing or service."  Mich. Comp. Laws § 750.218(1)(c). For such a charge, the prosecutor must "present evidence to show that defendant knowingly made a false representation with an intent to defraud, cheat, or deceive."  *People v. Mocon*, No. 241044, 2003 WL 22849704, *1 (Mich.App. 2003) (citing Mich. Comp. Laws 750.218(1)(c)).

43

Plaintiff contends that defendant Govorchin conveyed money from plaintiff's account to the attorney general's account, violating the Michigan Uniform Fraudulent Conveyance Act, Mich. Comp. Laws §§ 600.2920, 2919a.  Compl. at 10 ¶ 52; Doc. Ent. 5.  Plaintiff also contends that defendant Govorchin converted the Sixth Circuit's mandate and represented it as a judgment debt and garnishment order in order to "obtain money under false pretenses over $100.00 dollars, in violation of [Mich. Comp. Laws § 750.218[.]" Compl. at 10 ¶ 53.  Alternatively, plaintiff complains that his Fourth and Fourteenth Amendment rights have been violated.  Compl. at 10 ¶ 54.

As for the other defendants, plaintiff claims that defendants Wittmann, Wolfenbarger and Ford "aided and abetted [d]efendant Govo[r]chin in the commission of an offense to commit larceny by false pretenses over $100.00 dollars, in violation of [Mich. Comp. Laws § 750.218[.]" Compl. at 11 ¶ 57.  Plaintiff further contends that defendants Wittmann, Wolfenbarger and Ford "aided and abetted [d]efendant Govo[r]chin in the commission of an offense to interfere with the control of [p]laintiff's property and wrongfully converted that property over to the Michigan Attorney General's Office, in violation of Michigan Uniform Fraudulent Conveyance Act, [Mich. Comp. Laws §§ 600.2920, 2919a][,] and Federal Aiding & Abetting Statute 18 U.S.C. § 2(B)."  Compl. at 11 ¶ 58; Doc. Ent. 5.  Alternatively, plaintiff claims his Fourth and Fourteenth Amendment rights have been violated.  Compl. at 11 ¶ 59.

**b.    Parties' arguments**

Defendants argue that Govorchin, Wolfenbarger, Wittmann, and Ford "are not liable under the state penal code or civil code for obtaining money under false pretenses because they committed no wrongful act."  Furthermore, defendants argue, "plaintiff may not prosecute a state

crime in a federal section 1983 civil action." Finally, defendants maintain that they are 'also not liable under any civil conspiracy theory." Mtn. Br. at 9.[31]

Specifically, defendants contend, "[d]efendants properly executed the Sixth Circuit's mandate regarding costs[,]" "[d]efendants did not engage in any criminal act, and even if they did, [p]laintiff may not personally prosecute them[,]" "[t]he [d]efendants followed MDOC policy when they removed funds from [p]laintiff's prisoner account to satisfy the court-ordered debt for appellate costs[,]" and "[t]he Court should decline to exercise jurisdiction over [p]laintiff's state civil law claims for unlawful taking of property." Mtn. Br. at 9-15. Defendants also argue "because there has been no violation of a federal right, plaintiff is not entitled to equitable relief." Mtn. Br. at 15-16. They claim to have lawfully executed the mandate by garnishing costs from plaintiff's trust account. Mtn. Br. at 16. Additionally, they argue:

> . . . Plaintiff is not entitled to reimbursement for moneys already removed from his account – even if the removal violated some federal statute or the Constitution, which [d]efendants maintain they have not done – because that would be retrospective relief in violation of the Eleventh Amendment.

Mtn. Br. at 16.

Plaintiff claims the March 5, 2004 mandate lacked a provisional court order awarding costs to defendants. Rsp. Affid. Skinner ¶ 5. He claims that defendant Govorchin's March 8, 2004 memorandum to defendant Wittmann fraudulently induced her that the mandate was a court order. Rsp. Affid. Skinner ¶ 6. He then claims that defendant Wittmann's March 25, 2004 memorandum to defendant Ford fraudulently described the mandate as a court order. Rsp. Affid. Skinner ¶ 7; Rsp. at 2.

---

[31]Plaintiff's response points out that he "does not seek to bring a conspiracy claim against the [d]efendants in his complaint." (Doc. Ent. 19 at 4).

Plaintiff claims that defendants Govorchin and Wittmann framed the Fed. R. App. P. 41(a) mandate as a court order, without a Fed. R. App. P. 36 order.  Rsp. at 7.  Plaintiff claims that defendants "were not acting pursuant to a court order under [Fed. R. App. P.] 36(a). Therefore, [they] wrongfully exerted control over [his] personal property (prison trust account)." Doc. Ent. 19 at 4.  Citing the Michigan Uniform Fraudulent Conveyance Act, Mich. Comp. Laws § 600.2920, and quoting *Citizens Insurance Co. of America v. Delcamp Truck Center, Inc.*, 178 Mich. App. 570, 575, 444 N.W.2d 210 (1989), plaintiff claims that defendants "obtained [his] funds [with neither] the court[']s permission [nor] the [p]laintiff's 'consent.'" Doc. Ent. 19 at 4. Plaintiff also claims that "[d]efendants wrongfully 'converted' [his] 'property' over to the Office of the Michigan Attorney General in violation of [Mich. Comp. Laws §] 2919a[,]" and that they were 'motivated by spiteful effort to get [him] for reasons wholly unrelated to any legitimate state objective."  Doc. Ent. 19 at 4.

**c.    Analysis**

To the extent that plaintiff claims defendants have violated 18 U.S.C. § 2 ("Principals"), plaintiff has no authority to initiate criminal proceedings in his own name.  *See Violett v. Pearson*, No. 97-6142, 1998 WL 381640, at *2 (6th Cir. 1998) (citing *Cok.v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (per curiam)) ("The district court properly dismissed [the civil rights plaintiff's] claims that the defendants engaged in criminal conduct because private citizens have no authority to initiate federal prosecution of the defendants for their alleged unlawful acts."); *Keenan v. McGrath*, 328 F.2d 610, 611 (1st Cir. 1964) ("Not only are we unaware of any authority for permitting a private individual to initiate a criminal prosecution in his own name . .

46

., but also to sanction such a procedure would be to provide a means to circumvent the legal safeguards provided for persons accused of crime[.]").

In light of this conclusion and the conclusions reached elsewhere in this report, the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims, such as his asserted violations of Mich. Comp. Laws § 750.218, found in the Michigan penal code;[32] the Michigan Uniform Fraudulent Conveyance Act (*see* Mich. Comp. Laws § 566.11); Mich. Comp. Laws § 600.2920(1) ("Actions to recover possession of goods and chattels"); and Mich. Comp. Laws § 2919a.

**7.     The Eleventh Amendment bars plaintiff's claims against defendants in their official capacities to the extent they seek monetary damages.**

The case caption of plaintiff's complaint states that defendants are sued "in their individual and official capacity[.]" Compl. at 1.  However, in the "parties" portion of his complaint, plaintiff sues defendants in their official capacities.  Compl. at 2 ¶ 11.  Defendants argue that "[a] suit against state officials in their official capacities is considered a suit against the state, and the Eleventh Amendment bar[s] such suits."  Mtn. Br. at 4.  In response, plaintiff "describes the inconsistent statement as an unconscious typing error."  (Doc. Ent. 19 at 3). Therefore, the Court should construe plaintiff's complaint as bringing his claims against defendants in both their official and individual capacities.

Plaintiff may not sue defendants for damages in their official capacities, because "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity,

---

[32]As to this claim, it is worth noting that "there is not a uniform rule at the state level regarding a citizen's right to initiate criminal proceedings."  *Harman v. Frye*, 425 S.E.2d 566, 570 (W. Va. 1992).

commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI.  42 U.S.C. § 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989).  However, plaintiff may seek injunctive relief from state officials sued in their official capacity.  *Will*, *supra*, 491 U.S. at 71 n.10.

Plaintiff may sue defendants for damages in their personal capacities, because "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983.  The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts."  *Hafer v. Melo*, 502 U.S. 21, 31 (1991).

For the foregoing reasons, the Court should consider plaintiff's claims against defendants insofar as they are sued in their official capacities only to the extent plaintiff seeks injunctive relief and should consider the claims against defendants insofar as they are sued in their personal capacities to the extent plaintiff seeks monetary damages.

**8.   In light of these conclusions, the Court need not address the defense of qualified immunity.**

**a.   Parties' arguments**

Defendants contend that "if not absolutely immune from suit, [they] are entitled to qualified immunity because they acted reasonably in executing the Sixth Circuit's mandate[.]"  Mtn. Br. at 7-9.

Plaintiff argues that "[defendants] Govorchin, Wolfenbarger, Wittmann, and Ford are not entitled to qualified immunity because they violated a clearly established right, and did not act reasonabl[y] under prison policies."  Rsp. at 15-18.

**b.      Qualified immunity generally**

With regard to qualified immunity, the Supreme Court has stated that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citing *Procunier v. Navarette*, 434 U.S. 555, 565 (1978) and *Wood v. Strickland*, 420 U.S. 308, 322 (1975)) (footnote omitted).  "[Q]ualified immunity would be defeated if an official 'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury....'".  *Harlow*, 457 U.S. at 815 (citing *Wood*, 420 U.S. at 322).

The doctrine of qualified immunity is intended to protect public officials "from undue interference with their duties and from potentially disabling threats of liability."  *Id*. at 806.  The Sixth Circuit has described the qualified immunity analysis:

> The first step in a qualified immunity analysis is whether, based on the applicable law, a constitutional violation occurred.  If we find a constitutional violation, we examine whether it involved clearly established constitutional rights of which a reasonable person would have known.  In determining whether a constitutional right is clearly established at the time of the actions in question we look first to decisions of the Supreme Court, then to decisions of this Court and other courts within our circuit, and finally to decisions of other circuits.  The standard for qualified immunity depends substantially on the level of generality at which the relevant legal rule is to be identified.  Therefore, for a plaintiff to make a successful . . . claim, the contours of the right must be sufficiently clear that a

49

reasonable official would understand that what he is doing violates that right. Although it need not be the case that the very action in question has previously been held unlawful, in the light of pre-existing law the unlawfulness must be apparent.

Once it is determined that the right is clearly established, the court must determine whether the plaintiff has alleged sufficient facts supported by sufficient evidence to indicate what the officer allegedly did was objectively unreasonable in light of the clearly established constitutional rights. Summary judgment is not appropriate if there is a genuine factual dispute relating to whether the defendants committed acts that allegedly violated clearly established rights.

*Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir. 1996) (internal citations, quotations, and alterations omitted). Thus, as *Dickerson* makes clear, the qualified immunity inquiry requires a three-step analysis: (1) has plaintiff alleged a violation of a constitutional right?; (2) if so, was that right clearly established at the time of the alleged conduct?; and (3) if the right was clearly established, has plaintiff alleged and sufficiently supported that the official's actions were objectively unreasonable in light of this clearly established right? Ultimately, "the burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity." *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000) (citing *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir.1991)).

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court examined the qualified immunity analysis in the context of a motion for summary judgment. The Court stated that "the first inquiry must be whether a constitutional right would have been violated on the facts alleged[.]" *Saucier*, 533 U.S. at 200. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* at 201. If, however, the first inquiry is satisfied, "the next, sequential step is to ask whether the right was clearly established." *Id.* at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable

50

officer that his conduct was unlawful in the situation he confronted." *Id.* at 202 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

The Court specifically rejected the Ninth's Circuit's conclusion that "the reasonableness inquiry into [the alleged constitutional violation] meant that it need not consider aspects of qualified immunity, leaving the whole matter to the jury." *Saucier*, 533 U.S. at 200. The Court held that "the ruling on qualified immunity requires an analysis not susceptible of fusion with the question whether unreasonable force was used in making the arrest." *Id.* at 197. Therefore, although the issue at bar is not whether excessive force was used, *Saucier* cautions courts to keep distinct the qualified immunity and summary judgment analysis and to rule "on that issue . . . early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Id.* at 200.

### c.    Analysis

The defense of qualified immunity should only be addressed after determining whether plaintiff has stated a constitutional claim upon which relief could be granted. "[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (1998) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).

The foregoing recommendations conclude that plaintiff's claims do not survive a Fed. R. Civ. P. 12(b)(6) motion for dismissal or a Fed. R. Civ. P. 56(b) motion for summary judgment. Therefore, the Court need not reach the issue of qualified immunity.

51

9.      **Defendants' request for costs and attorney fees is premature.**

Defendants request that the Court "award costs and fees in their favor." Mtn. Br. at 17. *See also* Rpl. at 3. The request is premature. Should the Court enter judgment in favor of defendants, they may present a bill of costs to the clerk of the Court pursuant to 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d)(1). If defendants seek attorney fees pursuant to 42 U.S.C. § 1988, they should follow the procedure set forth in Fed. R. Civ. P. 54(d)(2).

**E.      Conclusion**

Plaintiff has not shown a genuine issue of material fact and has not stated a claim upon which this court should grant relief. For the reasons mentioned above plaintiff's claim should be dismissed with prejudice.[33]

**III.    NOTICE TO PARTIES REGARDING OBJECTIONS:**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). Filing of objections that

---

[33]Defendants argue that the Court "should dismiss this action in accordance with 28 U.S.C. [§] 1915(e)(2)(B), and count the dismissal as a 'strike' under § 1915(g)." Mtn. Br. at 17. Section 1915, which governs in forma pauperis proceedings, provides that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted[.]" 28 U.S.C. § 1915(e)(2)(B)(ii). This statute does not apply to the instant case, because plaintiff was denied in forma pauperis status by my October 13, 2004 order (Doc. Ent. 2). *See Benson v. O'Brian*, 179 F.3d 1014, 1017 (6th Cir. 1999) ("28 U.S.C. § 1915(e)(2) is inapplicable to actions that are not pursued in forma pauperis.").

raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated 9/7/05

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on September 7, 2005.

s/Eddrey Butts
Case Manager